SHEPARD, Senior Judge,
dissenting.
J.K’s lawyer places two assertions before us. He says one officer unconstitutionally entered his backyard, and he claims the officers stayed too long at his property and knocked on his door too many times.
My reaction to these two points is that the officer’s stay in the backyard produced no evidence supporting the juvenile finding that is being appealed, and that the continued knocking is not what led the juveniles inside ultimately to step outside, visibly impaired from drinking.
My take on the events that gave rise to this proceeding, viewed favorably to the trial court’s judgment as the standard for appellate review demands, is rather differ *240 ent than the way the majority sees the facts.
The Winamac Police Department dispatched officers just after 1 a.m. to investigate a complaint that juveniles were pushing a shopping cart around the neighborhood, making enough noise to provoke dogs to bark at an hour when most people are trying to sleep.
The officers quickly observed a gathering of vehicles near 412 Decker Drive, including a pickup truck visibly containing the offending shopping cart. This cart was labeled with the name of a store about a mile away. Transcript at 12-15. While the majority relies on the idea that there is nothing inherently illegal with owning a shopping cart, I’d be willing to take notice that a substantial number of carts not on store parking lots were likely filched from their owners.
As the majority observes, the officer who initially knocked on the front door could hear multiple people inside and see them peering through the blinds. The officer who went around to the back yard could see beer cans and wine bottles on the kitchen counter.
When no one answered the front door, the officers decided to tow the truck containing the apparently stolen shopping cart. Most of the time the police remained on the scene consisted of waiting for the tow truck to arrive, something like forty minutes.
The Court’s decision to reverse the delinquency finding rests substantially on (1) the long period that one officer occupied the back yard, (2) the many times the officer in front knocked on the door, and (3) the length of the period officers remained on the scene waiting for the tow.
I agree that there was little justification for a long occupation of the back yard. On the other hand, very little of consequence occurred as a result. Even after seeing the beer and wine through the kitchen window, the police did not take any particular action other than to remain in place, and there is abundant evidence of J.K’s offenses even if what had been seen in the kitchen were held inadmissible.
The same can be said for the repeated knocks at the front door. None of these produced a response from the occupants, and the police stayed outside.
What happened next was that the tow truck arrived and the owner of the pickup, seventeen-year-old T.T., decided to come out and look after his interests. He opened the front door and stepped outside, visibly intoxicated. Transcript 19-20. The officers asked T.T. to summon the owner of the residence, and seventeen-year-old J.K. appeared, his eyes bloodshot. Transcript 22.
The trial judge concluded that the officers, having seen T.T. and J.K. in this state, were warranted in entering the home to assure the safety of the other occupants. It seemed highly likely there were other occupants in light of the large number of cars parked out front, and we read almost daily about the sad consequences of teenage drinking parties.
I am inclined to think Judge Shurn was right about the reasonableness of the officers entering the home, but it need not be so in order for us to resolve this appeal.
I conclude that the police were reasonable to wait for the tow truck, and reasonable to effect arrests once T.T. and J.K. appeared at the door of the home, noticeably under the influence.